# STATE OF CONNECTICUT *v.* ANDREW C. HAIGHT
## (AC 24335)

Foti, West and McDonald, Js.

Argued October 26, 2004—officially released March 29, 2005

frivolous, denied counsel's motion for leave to withdraw appearance and ordered counsel to proceed with the appeal.

*Brenden P. Leydon,* with whom, on the brief, was *Mark D. Phillips,* for the appellant (defendant).

*Sarah Hanna,* special deputy assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *Robert G. Hall, Jr.,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Andrew C. Haight, appeals from the judgment of conviction, rendered after the trial court accepted his conditional plea of nolo contendere,[1] of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a. The court accepted the defendant's plea after it denied his motion to dismiss.[2] On appeal, the defendant claims that the court improperly denied his motion to dismiss because there was insufficient

_____

[1] The defendant's plea was accepted pursuant to General Statutes § 54-94a and Practice Book § 61-6.

General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's . . . motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion . . . to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied . . . the motion to dismiss. . . ."

Practice Book § 61-6 (a) (2) (i) provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's . . . motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such appeal shall be limited to whether it was proper for the court to have denied . . . the motion to dismiss. . . ."

[2] The defendant based his motion to dismiss on insufficient evidence and insufficient probable cause to justify the bringing or continuing of the information and to justify placing him on trial.

evidence to sustain the charge. We agree and reverse the judgment of the trial court.

The record reflects that the court held an evidentiary hearing on the defendant's motion to dismiss and denied the motion orally at the conclusion of the hearing. The court subsequently filed a memorandum of decision encompassing its ruling, which included the following facts.[3] At or around 12:30 a.m. on October 20, 2001, Kevin J. Dowling, a New Canaan police officer, was driving along Elm Street when he observed the defendant's Lexus RX300 parked in a parking space with its headlamps illuminated. He did not observe anyone in or around the motor vehicle and drove around the block. Dowling returned to the vehicle and observed the defendant inside of the vehicle, asleep. Dowling looked inside the vehicle and saw that the keys were in the ignition in the off position. The vehicle's motor was not running. Dowling attempted to rouse the defendant, to no avail. Dowling then opened the driver's door and a warning chime in the vehicle sounded, indicating that the keys were in the ignition and that the door was open. The defendant was placed under arrest and subsequently submitted to breath tests, which he failed.[4]

In its memorandum of decision, the court stated that "[i]t is for the trier of facts, with all the relevant testi-

[3] The dissent properly points out that in ruling on a motion to dismiss on the ground of insufficient evidence, the court should not make any findings of fact. "When hearing a motion to dismiss, the court is confined to determining whether the . . . evidence, if believed and if given the benefit of all favorable inferences, makes out a prima facie case. . . . The court, on such a motion, *may not make findings of fact* . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Perez*, 82 Conn. App. 100, 103 n.5, 842 A.2d 1187, cert. denied, 269 Conn. 904, 852 A.2d 734 (2004). Although the court used the term "factual findings" in its discussion of the evidence, we afford the court's recitation of the evidence no deference and base our review on the evidence presented at the hearing, as found in the record.

[4] The defendant does not contest the fact that the evidence supports a finding that he was intoxicated at the time of his arrest. The sole issue is whether the evidence supports a finding that he operated a motor vehicle while intoxicated.

mony and evidence, to determine if there was 'operation' with the insertion of the car key and turning on of car lights, which alone or in sequence would set the car in motion." The court concluded that the evidence was sufficient to sustain the charge and denied the motion to dismiss. On appeal, the defendant claims that the court improperly denied the motion because the state did not establish a prima facie case. Specifically, the defendant posits that the fact that the key was in the vehicle's ignition, in the off position, absent other circumstances, is insufficient to demonstrate operation for purposes of § 14-227a.

We begin our discussion by addressing the propriety of the court's action on the defendant's motion to dismiss for insufficient evidence prior to trial. We note that the state did not object to the evidentiary hearing; in fact, it participated in the hearing.[5] "Dismissal under [General Statutes] § 54-56 for insufficient cause to justify the prosecution requires the court explicitly to weigh all the competing factors and considerations of fundamental fairness to both sides—the defendant, the state and society, and presumably the victim. . . . This difficult and delicate process necessarily involves a careful consideration by the court of such factors as the strength of the state's case, the likelihood of conviction, the severity of the crime, its effect on the victim, the strength of the defendant's defense, the defendant's personal situation, and all the other myriad factors that underlie a judgment regarding fundamental fairness." (Citation omitted.) *State* v. *Dills*, 19 Conn. App. 495, 503–504, 563 A.2d 733 (1989).

The evidentiary insufficiency prong of § 54-56 does not apply when probable cause has been found by the issuance of a warrant, in which case a trial first must transpire. Id., 503. Pursuant to § 54-56, a court, on

---

[5] The state on appeal also does not challenge the propriety of the hearing.

motion by the defendant, may dismiss pending criminal charges if "there is not sufficient evidence or cause to justify" the continued prosecution. See *State* v. *Kinchen*, 243 Conn. 690, 701, 707 A.2d 1255 (1998). Practice Book § 41-8 (5) provides that in criminal matters, a motion to dismiss is the proper vehicle to make a claim of insufficiency of the evidence. The denial of such a motion may form the basis of an appeal following a judgment of conviction rendered after a conditional plea of nolo contendere. See *State* v. *Vickers*, 260 Conn. 219, 221, 796 A.2d 502 (2002); *State* v. *Wiggs*, 60 Conn. App. 551, 552, 760 A.2d 148 (2000). In the present case, the defendant was not arrested pursuant to a warrant.

The sole issue to be decided on appeal is whether the court properly denied the defendant's motion to dismiss in light of the evidence presented. Our review of the court's ultimate legal conclusion and resulting denial of the motion to dismiss is de novo. *Pitchell* v. *Hartford*, 247 Conn. 422, 429, 722 A.2d 797 (1999).

"The definition of operation of a motor vehicle is well established. One need not drive a vehicle to operate it. . . . Operation occurs when a person in the vehicle intentionally does any act or makes use of any mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." (Internal quotation marks omitted.) *State* v. *Gordon*, 84 Conn. App. 519, 527, 854 A.2d 74, cert. denied, 271 Conn. 941, 861 A.2d 516 (2004). Engaging a motor vehicle's ignition affects or could affect the vehicle's movement and may be sufficient to constitute operation. See *State* v. *Ducatt*, 22 Conn. App. 88, 93, 575 A.2d 708, cert. denied, 217 Conn. 804, 584 A.2d 472 (1990). We conclude, however, that the state did not factually support its allegation of operation by presenting evidence that a key was in the motor vehicle's ignition, while such key was

neither in the "on" nor "start" positions of the ignition,[6] even when the motor vehicle's headlamps were illuminated.

The defendant in *State* v. *DeCoster*, 147 Conn. 502, 162 A.2d 704 (1960), was convicted of operating a motor vehicle while intoxicated. In *DeCoster*, the evidence supported a finding that a police officer found the defendant, who was intoxicated, slumped over the steering wheel of his motor vehicle. Id., 504. The vehicle's key was in the ignition, but the ignition was in the off position. Id. The two right tires on the motor vehicle were flat, and the vehicle exhibited body damage on its right

---

[6] During the evidentiary hearing, Dowling testified that he observed the keys in the ignition, but that he either did not notice or did not recall whether the keys were in the "off position." Dowling testified that when he opened the driver's door, a chime sounded. He further testified that he neither observed the vehicle in motion nor felt the vehicle's hood to ascertain whether it was warm. The police report filed by Dowling indicates only that when Dowling opened the driver's door to the vehicle, "a warning chime sounded indicating the keys were in the ignition and a door was open."

The defendant elicited testimony from Kenneth Devlin, a Lexus service technician with master certification. Devlin testified that there are four ignition positions on the defendant's Lexus: "off, accessory, on and start." Devlin testified that the car can be considered "on," with its engine running, in only the "on" and "start" positions. Devlin further testified that the car is "considered off" in the other positions. He also testified that the vehicle's chime sounds when the key is in either of those other positions, which he alternatively described as the "lock" or "accessory" positions. An owner's manual for a Lexus vehicle with an ignition switch similar to that of the defendant's vehicle also suggests that there are four ignition positions: lock, accessory, on and start. Although Devlin testified that the chime would sound with the key in the "on" position in the ignition, he immediately thereafter clarified his response. We respectfully disagree with the dissent's characterization of Devlin's testimony as to when the chime sounds as conflicting. See footnote 1 of the dissenting opinion. Further, the owner's manual states that if the key is left in the accessory or lock positions and the driver's door is thereafter opened, "a buzzer will remind you to remove the key." On the basis of that evidence, and viewing that evidence in the light most favorable to the state, we conclude that it would have been unreasonable for a rational fact finder to have found that the key was in either the "on or "start" positions of the ignition when Devlin came upon the vehicle.

side. Id. Four traffic signs close to where the motor vehicle was stopped had been knocked down. Id.

In reversing in part the conviction on the ground of insufficient evidence, our Supreme Court in *DeCoster* concluded that the state had failed to demonstrate the critical nexus between intoxication and operation; that is, the state failed to demonstrate how much time had transpired between the moment the defendant last operated his motor vehicle and the moment he was discovered sitting in the motor vehicle. Id., 505. The court noted that although the evidence supported an inference that the defendant's motor vehicle had struck the signs along the nearby intersection, there were no witnesses who had observed the defendant operating the motor vehicle and no evidence to show how long it had been stationary. Id., 504.

As in *DeCoster*, there is no evidence in the present case demonstrating when the defendant operated his motor vehicle in relation to his intoxication. The evidence does not demonstrate that the defendant was operating his motor vehicle when Dowling discovered him. Apart from evidence concerning the defendant's physical condition and position in the vehicle, there is only evidence of a key in the motor vehicle's ignition and the motor vehicle's headlamps having been turned on. Taken individually or together, this evidence is not sufficient to demonstrate that the defendant had engaged the mechanical or electrical equipment of his motor vehicle so as to activate the motive power of the vehicle. In the present case, the evidence of operation as required by § 14-227a is lacking.[7]

---

[7] The dissent relies on *State* v. *Englehart*, 158 Conn. 117, 256 A.2d 231 (1969), in support of its conclusion that a fact finder reasonably could have found, on the evidence presented, that the defendant was operating his vehicle, or had operated his vehicle, while under the influence of intoxicating liquor. In *Englehart*, the evidence permitted a finding that the defendant was discovered alone in her vehicle. Id., 120. The vehicle was stopped in the center of a road with its headlights illuminated and its motor off. Id. No witnesses observed her driving the vehicle. Id. The defendant was found

The judgment is reversed and the case is remanded with direction to grant the defendant's motion to dismiss and to render judgment thereon.

In this opinion WEST, J., concurred.

MCDONALD, J., dissenting. I disagree that the denial of the motion to dismiss should be reversed.

In granting a motion dismiss for insufficient evidence, the trial court must find that the entire case that the state could present fails to support a reasonable finding that General Statutes § 14-227a has been violated. Cf. *State* v. *Morrill*, 193 Conn. 602, 611, 478 A.2d 994 (1984). In so doing, the court must consider the evidence in the light most favorable to the state. *State* v. *Kinchen*, 243 Conn. 690, 702, 707 A.2d 1255 (1998).

At the hearing, the defendant, Andrew C. Haight, called as witnesses the arresting police officer and a Lexus automobile mechanic. On the issue of whether the officer's testimony would constitute the state's

slumped over the vehicle's steering wheel; she was unconscious and " 'dead drunk.' " Id. "The key was in the ignition switch, which was turned to the 'on' position, the gear shift lever was in the 'drive' position, and the emergency brake was on." Id. Our Supreme Court concluded, on the basis of that and other evidence, that it was reasonable for the jury to conclude that the defendant in *Englehart* had operated the vehicle while intoxicated. Id., 124.

We consider *Englehart* to be factually distinguishable from the present case because the evidence here permits only the finding that the defendant's vehicle was not found in the center of a road. The evidence permits no reasonable finding other than that Dowling found the defendant's vehicle parked in a "legal parking spot" along a roadway. Dowling referred to it as "street parking in front of a bank." The road on which the state trooper discovered the vehicle in *Englehart* was described as a "back" road. Id., 120. Here, the evidence permits only the finding that the defendant's vehicle was parked near a bank and that the defendant told Dowling that he had earlier in the evening been to a restaurant that is a few blocks from the location of his vehicle. *Englehart* is also factually distinguishable because in the present case, the key was not turned to the "on" position in the vehicle's ignition.

entire case, the state did not make such a concession, and the officer's testimony that he did not know of any other police reports was not the required conclusive evidence. See *State* v. *Bellamy*, 4 Conn. App. 520, 528, 495 A.2d 724 (1985). The mechanic's testimony did not concern this issue. The mechanic presented the defendant's case, explaining the operation of an ignition switch over the state's objection.

Moreover, our Supreme Court has stated that the question of whether a vehicle was being operated is one of fact to be determined under the particular facts of the case. *Murphy* v. *Commissioner of Motor Vehicles*, 254 Conn. 333, 344, 757 A.2d 561 (2000). In *Murphy*, our Supreme Court noted that in *State* v. *Englehart*, 158 Conn. 117, 256 A.2d 231 (1969), the court "explained how a jury might view 'operation' in light of particular facts. In *Englehart*, the defendant was discovered in her car, stopped in the middle of the road with the headlights on and the motor off, and slumped over the steering wheel. . . . The court stated that, '[from] the evidence . . . [a] jury . . . [could infer] that the defendant, while under the influence of intoxicating liquor, had either driven the vehicle to the point at which it stopped or had attempted to start it after it had stopped . . . . This inference, according to the court, was both reasonable and logical in light of the facts proven." (Citations omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, supra, 345 n.15.

In *Englehart*, the defendant was "slumped over the steering wheel . . . unconscious, 'dead drunk' . . . drooling at the mouth . . . [and] [n]o person other than the defendant was in the car." *State* v. *Englehart*, supra, 158 Conn. 120. Our Supreme Court distinguished *State* v. *DeCoster*, 147 Conn. 502, 162 A.2d 704 (1960), from *Englehart* on the ground that in *DeCoster*, there was evidence that the car's ignition was turned off, that both right tires were flat, and that there was no evidence

that the defendant was in the driver's seat, no evidence that the vehicle's lights were on after dark and no evidence that the vehicle was in a public highway. *State* v. *Englehart*, supra, 123–24.

In this case, at 12:30 a.m., the defendant sat unconscious and alone in the driver's seat of the vehicle with the headlights on and with the key in a position to cause the warning chime to sound when the driver's door was opened.[1] The defendant told the officer that he had been at home that evening and then at Gates Restaurant, in nearby New Canaan, and had consumed three drinks. The police report reflects that the defendant's home was in South Salem, New York. The police report also indicates that the defendant was drooling after he was awakened and that the defendant's Breathalyzer tests at 2 a.m. and 3 a.m. showed blood alcohol levels of 0.176 and 0.172. See *State* v. *Kinchen*, supra, 243 Conn. 703.

The Lexus mechanic testified that the ignition switch is a cylinder into which the key is inserted and turned to start the engine after which the key would return to the on position, leaving the motor running. The owner's manual for a similar Lexus vehicle introduced by the defendant states that the steering wheel is locked when the ignition switch is in the lock position; see footnote 1;

---

[1] In considering a motion to dismiss on the ground of insufficient evidence, the court should not itself make findings of fact from the evidence. *Thomas* v. *West Haven*, 249 Conn. 385, 399, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000). The court, however, did make such factual findings, finding that the arresting officer saw the keys in the off position in the ignition switch.

The arresting officer testified at the hearing that he did not recall whether the key was in the on or the off position, and the officer's report makes no mention of the position of the key in the ignition switch. The defense mechanic's testimony concerning whether the warning chime would sound if the key were in the on or off positions in the ignition switch was conflicting. The owner's manual presented by the defendant also illustrated that the Lexus switch had no off position. The vehicle had only lock, accessory, on and start positions. Thus, the court improperly found that the key was in the off position in the ignition switch.

and that the engine immobilizer system is automatically engaged when the key is removed from the ignition switch. Similar evidence could have been presented by the state after developing its case. The state could have established that the key was not in the off position and that the ignition system was unlocked.

The trier of fact could have reasonably found that the defendant had driven from his home in New York to a parking space near the restaurant. There, he drank alcohol and then returned to start the vehicle, which was operable. The vehicle was parked alongside the traveled portion of the highway, and the trier of fact could have reasonably concluded that before passing out, the defendant had begun the process of starting the motor by inserting the ignition key, sufficiently to engage the chime, turning on the lights and preparing to drive away. I would conclude that there was sufficient evidence of the operation of a motor vehicle. The proof gave rise to a situation such as that in *State* v. *Swift*, 125 Conn. 399, 6 A.2d 359 (1939). See *State* v. *Englehart*, supra, 158 Conn. 121. Inserting the key in the ignition switch was "mak[ing] use of [a] mechanical or electrical agency which alone or in sequence will set in motion the motive power of the vehicle." *State* v. *Swift*, supra, 403; see *State* v. *Englehart*, supra, 121. To the present day, our cases still follow *Swift*. E.g., *State* v. *Gordon*, 84 Conn. App. 519, 527, 854 A.2d 74 (quoting this same definition of "operation"), cert. denied, 271 Conn. 941, 861 A.2d 516 (2004); *State* v. *Wiggs*, 60 Conn. App. 551, 554, 760 A.2d 148 (2000) (same); *State* v. *Angueira*, 51 Conn. App. 782, 786, 725 A.2d 967 (1999) (same); *State* v. *Teti*, 50 Conn. App. 34, 38, 716 A.2d 931 (same), cert. denied, 247 Conn. 921, 722 A.2d 812 (1998); *State* v. *Ducatt*, 22 Conn. App. 88, 90, 575 A.2d 708 (same), cert. denied, 217 Conn. 804, 584 A.2d 472 (1990).

After the key had unlocked the ignition switch, freed the steering wheel and disabled the engine immobilizer, it could then be turned to start the engine. Ignition systems have evolved significantly in the forty-five years since *DeCoster*. In this case, "the controls of a car capable of immediate powered movement [were] under the control of an intoxicated motorist, which is precisely the evil the legislature sought to avoid through [the statute]." *State* v. *Ducatt*, supra, 22 Conn. App. 93. As in *Ducatt*, the fact that the defendant was dead drunk, which prevented him from turning the key, provides no assurance that the engine would not be started when the defendant came to if the officer had not intervened.

Accordingly, I respectfully dissent.